CHARLES HUNNICUTT CO. v. A. B. GASTON CO. et al.

(District Court, W. D. Pennsylvania. August 22, 1913.)

No. 99.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SEED CORN GRADER.

The Hunnicutt patent, No. 989,976, for a seed corn grader, is void for lack of novelty as to claims 1, 2, and 4. Claims 3 and 5 *held* not infringed, if valid.

In Equity. Suit by the Charles Hunnicutt Company against A. B. Gaston Company, a firm, and the A. B. Gaston Company, a corporation. On final hearing. Decree for defendants.

Chester C. Shepherd, of Columbus, Ohio, and John B. McAdoo, of Pittsburgh, Pa., for complainant.

E. W. McArthur, of Meadville, Pa., Sion B. Smith, of Pittsburgh, Pa., and Hugh C. Lord, of Erie, Pa., for defendants.

YOUNG, District Judge. This is a bill in equity brought by the Charles Hunnicutt Company for the infringement of letters patent No. 989,976, granted April 18, 1911, to Charles Hunnicutt. In his specification the patentee says:

"My invention relates, more particularly, to a portable and manually operable corn grading device for grading seed corn. The object of my present invention, broadly stated, is to provide a portable corn grader, which will be strong and durable in construction, positive in action, light in weight, easily operated and controlled, and which can be manufactured and sold at a comparatively low price. More particularly speaking, my object is to provide a portable corn grader adapted to grade grains of seed corn as to thickness and to width, and to eliminate undesirable grains, and to accomplish the same at one operation and with certainty and precision."

Of the five claims of the patent, the first four are in controversy. These claims are:

"1. A hand seed corn grader, comprising a frame forming a hopper at its upper end, a screen in said frame forming the bottom of said hopper, said screen being formed to permit the free passage of a mass of corn over its apertures and having screening openings of a given width to prevent the pas-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sage of abnormally thick grains of corn, said openings being greater in length than in width, and a lower screen in said frame spaces from said upper screen to form a graded corn receptacle, said lower screen being provided with screening openings having portions that are as wide as the openings in the upper screen, but shorter than the same, there being an outlet from said grad-ed corn receptacle for the discharge of the graded corn therefrom.

"2. A corn grader, comprising a bodily invertible frame and a pair of spaced screens mounted in said frame one above the other, and having openings there-through, that portion of the frame that lies above the upper screen forming a hopper-like receptacle for which the upper screen forms the bottom, the frame being open at one end of the space between the screens, the upper screen being formed to permit the free passage of a mass of corn over its apertures and having elongated openings therethrough, and the lower of said screens having openings therethrough that are as wide as, but shorter than, the openings of the upper screen, the lower screen being extended beyond the opening of the frame to form a spout, as and for the purpose set forth.

"3. A hand seed corn grader, comprising a frame forming a hopper at its upper end, a screen in said frame forming the bottom of said hopper, said screen being formed to permit the free passage of a mass of corn over its apertures and having screening openings of a given width to prevent the passage of abnormally thick grains of corn, said openings being greater in length than in width, a lower screen in said frame spaced from said upper screen to form a graded corn receptable, said lower screen being provided with screening openings substantially as wide as the openings in the upper screen, but shorter than the same, to permit the passage of narrow and short grains, there being an outlet from said graded corn receptacle for the discharge of the graded corn therefrom.

"4. A seed corn grader, comprising, in combination, a bodily invertible frame, forming a hopper-like receptacle at its upper part, an upper screen in said frame formed to permit the free passage of a mass of corn over its aper-tures, said screen forming the bottom of said hopper and provided with ob-long screening openings of a given width to prevent the passage of abnormal-ly thick grains of corn, a lower screen in said frame spaced from said upper screen to form a graded corn receptacle, said lower screen being provided with screening openings substantially as wide as the openings in the upper screen, but shorter than the same, to prevent the passage of grains of stand-ard width, said upper screen being provided with means to effect the entrance of the grains of corn edgewise into its apertures, said frame being provided with a discharge opening leading from said graded corn receptacle."

There is some difference in these claims, but the only one neces-sary to notice is that claims 1 and 3 describe a hand seed corn grader, while claim 2 only describes "a corn grader, comprising a bodily invertible frame and a pair of spaced screens mounted in said frame one above the other," and claim 4 "a seed corn grader, comprising, in combination, a bodily invertible frame," etc.

The whole device may be simply described as a framework of wood having an upper and lower screen, with oblong openings in the up-per and both round and oblong openings in the lower. The evidence shows that in the use of corn planters it is necessary to have corn of uniform size, so that an equal number of kernels may be deposited in each hill. To secure this the openings in the upper screen are oblong and of such width as to prevent the abnormally thick kernels from passing through, but permitting all the other kernels to pass through and be deposited on the lower screen, and the openings, both oblong and round, in this screen, are the same width as those in the upper screen, but are shorter as to the oblong openings. A quan-tity of corn being placed on the upper screen, there would pass

through the openings, by a manual shaking of the frame, all the corn except the abnormally large grains, and those will be retained on the upper screen, and at the same time and by means of the same operation there will pass through the lower screen the small undesirable grains of corn, whether the same be round or broad and thin, and so unfit for seed, leaving upon the top of the lower screen the kernels which are desirable for seed, graded both as to width and thickness. Three grades of kernels are thus secured—the abnormally thick, retained in the hopper in the top of the upper screen; the uniformly graded as to thickness and width, on the top of the lower screen; and a mixture of small and wide, but thin, kernels which have passed through the lower screen. The frame is provided with an opening between the upper and lower screen, so that the graded corn may pass into a receptacle, and the frame may then be inverted, and the thick grains in the hopper on the top of the upper screen be deposited in a separate receptacle, and the grains which may be sticking in the upper screen dislodged.

The advantage of this device consists principally in, first, that all the corn may be graded by one operation simultaneously; second, that the corn can be retained on the screens until thoroughly graded; third, that the screens may be cleaned by manually inverting the frame and as a continuation of the process of grading; fourth, that the device is portable, being light in weight, and is manually operable. A simple reading of the specifications and the evidence is convincing that the device is a most valuable, simple, easily operated, and desirable invention.

The defenses are prior invention, prior use, and lack of invention.

First, as to prior invention: The defense that the Hunnicutt patent was anticipated by the patents of Werckle, No. 868,898, dated October 22, 1907, and No. 887,557, dated May 12, 1908, cannot be sustained. Those patents were for machines in which were inserted several screens, one above the other, and which were given an end motion by the turning of a crank. These screens were inclined, and when the corn passed from the hopper on to the upper screen some were here retained and passed out through a spout, thence that which went through the upper screen to the second screen, and so through the three screens, securing four grades of kernels. The disadvantages which Hunnicutt cured were that it was not capable of manual operation, did not allow the kernels to remain on the screens until completely separated, and could not be inverted for cleaning.

The Delany patent, No. 823,322, dated June 12, 1906, offered in evidence as anticipating the Hunnicutt patent, is thus described in the specification:

"The device, as shown, is adapted to be operated by hand much like an ordinary sieve, and, as shown, comprises in brief two pan-shaped members of similar size, each having a perforated or screening bottom, one member having round perforations of suitable size to permit the escape of grains, etc., smaller than those desired for seed, while the other pan has oblong perforations which will admit the passage of grains suitable in size and shape for seed, and will retain all large imperfectly formed grains that are unsuitable for seed."

The disadvantages which Hunnicutt cured were that it had to be opened, so that the corn might be placed within, and that after the operation of vibrating the apparatus was completed it had to be again opened to remove the rejected abnormally large kernels. An examination of it and of the evidence shows that it lacked the simplicity of the Hunnicutt device, and was not capable of performing simultaneously the complete separation of the kernels into three grades. The Hunnicutt device was a step in advance of the Delany device.

The other patents recited need not be separately considered. None of them possesses the advantages of the Hunnicutt device. We therefore conclude that the Hunnicutt device was not anticipated by any prior patents.

As to prior use: It is claimed by respondent that the Kretchmer Manufacturing Company manufactured and used in January, 1906, and continuously thereafter, a double grader which clearly anticipated the Hunnicutt grader. An examination of the "Defendant's Exhibit, Kretchmer Mfg. Co. Corn Grader, No. 1," shows that it comprises a wooden frame, containing two screens, having a hopper about the upper screen for the reception of the corn, corrugated V-shaped ribs, between which kernels may pass and those abnormally large prevented from passing, a lower screen, perforated with round holes of sufficient diameter to permit the small undesirable kernels to pass through, and retain on the lower screen the kernels uniform in size and suitable for seed, with an opening from the top of the lower screen from which the graded kernels may be brought into a receptacle. It is portable, manually operable, and provides for grading the corn into three grades simultaneously, namely, the abnormally large kernels on the upper screen, the uniform and desirable kernels on the lower screen, and the small kernels which pass through the lower screen. It differs from the Hunnicutt grader only in that the top screen has openings extending the full length of the screen, the Hunnicutt grader having small openings divided into one inch spaces, and in that the Kretchmer grader has only round openings in its lower screen, while the Hunnicutt has both round and oblong openings in its lower screen.

We regard the Kretchmer grader as exactly identical in construction and function with the Hunnicutt grader, except as to the openings in the lower screen; but we do not regard the separation of the openings in the upper screen into divisions as being at all necessary or useful. The sole question, then, is: Does the evidence satisfy us that the Kretchmer grader was in public use for more than two years prior to the application of Hunnicutt? The rule to guide us in determining this question is that stated in Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821, by Mr. Justice Swayne:

"The burden of proof rests upon him [the defendant], and every reasonable doubt should be resolved against him."

Edward Kretchmer, manager of the Kretchmer Manufacturing Company testified (Respondent's Record, 25) that in the spring of 1904 he conceived the idea of a corn grader, and that he worked at

the construction of such a device until January, 1906, when he constructed and had manufactured under his direction about 40 graders of the description shown by "Defendant's Exhibit, Kretchmer Mfg. Co. Corn Grader, No. 1," that exhibit being one of the graders manufactured at that time; that most of the 40 graders were delivered to the Pioneer Implement Company as salesmen's samples. He was corroborated by Charles W. Kretchmer, foreman of the Kretchmer Manufacturing Company, who testified that in the latter part of January, or first of February, 1906, 50 graders of the kind of Exhibit No. 1 were made by the Kretchmer Manufacturing Company, and that he personally delivered 3 dozen of them to the Pioneer Implement Company, and 2 or 3 of them were given to traveling men of the Pioneer Implement Company, and that he personally gave one to W. H. Perkins about February 16, 1906, and this time he fixes by the making of a lease of his land to Perkins. Perkins testifies that Charles W. Kretchmer gave him a grader similar to Exhibit No. 1, and he produced the one given him, which is admitted to be of the same construction as Exhibit No. 1.

G. A. Smith, vice president of the Kretchmer Manufacturing Company, testifies (Respondent's Record, 47) that the "Defendant's Exhibit, Kretchmer Mfg. Co. Corn Grader, No. 1," was manufactured by that company in January or February, 1906, and that some of them were delivered to the Pioneer Implement Company.

We find no evidence contradicting this evidence of Edward and Charles Kretchmer and G. A. Smith: but it is argued that, because there is no entry in the books of the Pioneer Implement Company of the receipt or account for corn graders, and no witness produced who testified to the reception of graders by that company, the Kretchmers and Smith are not corroborated, and that the case is supported only by the evidence of the inventor and his associates in business.

We have carefully gone over all the evidence, fully considered the arguments of complainant's counsel, and we are well satisfied that respondent has carried the burden of showing beyond a reasonable doubt that the Kretchmer corn grader is identical with the Hunnicutt grader, except as to the oblong openings in the lower screen, and that it was perfected and passed into public use in January or February, 1906. This was more than two years prior to the date of Hunnicutt's application, which was April 20, 1908. The evidence is convincing that large quantities of the Kretchmer corn grader were delivered to the Pioneer Implement Company in the fall of 1906, and that in the fall of 1907 3,000 were contracted for by the Pioneer Company with the Kretchmer Company. This was some months before Hunnicutt filed his application. The burden was thereby shifted to complainant to convince by the preponderance of the evidence that his invention was made at least earlier than November, 1907.

We are not satisfied from the evidence before us that an earlier date can be given to the Hunnicutt invention than February 24, 1908, when Hunnicutt's grader was first put upon the market. We have carefully considered all the evidence bearing upon this branch of the case, and it fails to convince us that Hunnicutt constructed the

double grader involved in the claim of his patent prior to his application. It may be true that he conceived the idea of a double grader, but there is nothing in the evidence to convince us that he did more than to make two screens having different sized openings in them. The only evidence in support of his invention prior to February 24, 1908, is his own unsupported evidence. It is very meager and is as follows:

"Q. 9. You may state as nearly as you can when you first conceived the device which is the subject of this suit, and when you first produced an operative device of this kind. A. I first conceived the idea of mechanically grading seed corn in the spring of 1903, and in the spring of 1904 I constructed the lower screen of the device referred to, and in the spring of 1905, about the 1st of March, I constructed the upper screen of the device, and produced an operative device; that is, the double screen corn grader.

"Q. 10. Was any test of the double screen corn grader made at the time it was produced? A. Yes; I made an experimental test on my own corn.

"Q. 11. Was this test successful? A. Yes.

"Q. 12. When did you first market this double screen corn grader? A. First began to place it on the market about the 24th of February, 1906. I might say that after the production of the double screen grader, 1st of March, 1905, I continued my experiments along the corn grader line. I invented and made a rotary grader, which I found was too expensive for the farmers to buy. And I also placed upon the market locally a single screen corn grader, and in the marketing of this device among the farmers of the neighborhood I learned that the farmers were in the habit of dispensing or eliminating the small kernels from the ear by breaking off the tip of the ear, and by the use of this single screen grader, which eliminated the larger and abnormally shaped kernels. This was all they desired, and the low price at which it sold met with their favor. I then, in the fall of 1906, employed a man to go to the state fairs in the corn belt and exhibit this single screen grader. It met with very popular approval. He sold a large number to farmers and took orders from implement jobbers. On his return, I organized a stock company for the manufacture and sale of this device. This was the latter part of October or November, 1906."

We do not find in this evidence sufficient to satisfy us that Hunnicutt conceived and put into substantial form that which he claimed as his invention, and he has therefore not carried the burden placed upon him, and his patent must be declared void for want of novelty.

We have said that the Kretchmer device was identical with the Hunnicutt device, with the single exception that the Hunnicutt device has in the lower screen oblong openings, as well as round openings, which the Kretchmer device does not have. While there is a great advantage in having the oblong openings in the lower screen for the purpose of separating the wide, but thin, kernels from the desirable kernels, which this lower screen accomplishes, and which may be a reason for sustaining the third and fifth claims of the patent, it is not now necessary for us to decide that question, because the uncontradicted evidence shows that the alleged infringing device does not contain such openings.

This disposes of the whole case, and makes it unnecessary for us to pass upon the question of lack of invention. We therefore must declare the Hunnicutt patent, No. 989,976, except as to the oblong openings in the lower screen, which we do not now decide, void for want of novelty, and dismiss the bill, with costs to the respondent.

Let a decree be drawn accordingly.